IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM HARBISON, *individually and on behalf of all other similarly situated,*

Plaintiff,

v.

LOUISIANA-PACIFIC CORPORATION,

Defendant.

13cv0814
**ELECTRONICALLY FILED**

# MEMORANDUM OPINION

This is a putative class action lawsuit wherein the purported class has asserted a breach of express warranty claim. Before the Court is Defendant's Motion to Dismiss the Amended Complaint and Brief in Support of same. Doc. nos. 41-42. Plaintiff timely filed a Response in Opposition to the Motion (doc. no. 45) and Defendant filed a Reply Brief. Doc. no. 48. The matter is now ripe for adjudication.

**I. Standard of Review**

Defendant filed its Motion to Dismiss predicated upon Federal Rule of Civil Procedure 12(b)(6).

In considering a Rule 12(b)(6) motion, Federal Courts require notice pleading, as opposed to the heightened standard of fact pleading. Fed. R. Civ. P. 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell*

*Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (citation omitted).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664.

This Court may not dismiss a complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009).

In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563 n.8.

**II. Factual Background**

As noted above, only Plaintiff's factual averments are to be taken as true solely for the purposes of deciding these two Motions to Dismiss. The relevant factual allegations are set forth herein and have been accepted as true by this Court for the purpose of deciding the Motion presently before the Court.

In the Amended Complaint, Plaintiff alleges that ABTco was a subsidiary for Louisiana-Pacific Corporation (Defendant), but now is just a registered trademark and no longer an active corporation. Doc. no. 25, ¶ 9. ABTco designed, tested, manufactured, marketed, advertised, warranted, and/or sold TrimBoard directly or indirectly through dealers and retail outlets. Id. ¶ 10. Defendant is both a manufacturer and seller of TrimBoard which was sold to Plaintiff as "Choicetrim." Id. ¶ 11.

Defendant, through a distributor, warranted and sold TrimBoard to Plaintiff through Plaintiff's builders. Id. ¶ 12. Plaintiff alleges that his builder was his agent.[1] Id. Plaintiff also alleges that his builder/agent was aware of the express warranty provided by Defendant when he purchased the TrimBoard from Defendant. Id. Plaintiff alleges that his builder/agent was in possession of the express warranty and that the builder/agent helped Plaintiff prepare his warranty claim against Defendant. Id.

---

[1] While the Court acknowledges this statement can be construed as a legal conclusion, Plaintiff's amended Complaint provides additional facts related to the nature of his relationship to his builder.

Plaintiff attached a copy of the express warranty at issue to the Amended Complaint and made it a part of his Amended Complaint. Id. ¶ 14. That express warranty states in pertinent part:

> TEN YEAR LIMITED WARRANTY – SUBSTRATE
>
> ABT Building Products Corporation warrants its TrimBoard . . . for a period of ten years from the date of installation under normal conditions of use and exposure, providing the trim is properly stored, installed, maintained, and protected as specified in ABTco's Application Instructions. Should the product fail within ten years of the date of installation, ABTco, Inc. . . . will replace the defective trim on the following basis: ABTco will compensate the owner for the repair and replacement of the affected trim for more than twice the original purchase price of the affected trim if failure occurs within ten years.

Doc. no. 1-2, p. 1.

### III. Discussion

Defendant's Motion to Dismiss asserts that Plaintiff did not and cannot assert facts necessary to support a claim for breach of express warranty because as a third party to the warranty: "(1) Plaintiff impermissibly seeks relief beyond the specific terms of the warranty; and (2) he did not bargain for [the] express warranty, know the terms[,] or even know identity of the entity issuing the express warranty." Doc. no. 42, p. 1. The Court will address each of these predicate bases, but in reverse order.

#### A. Plaintiff did not Bargain for the Warranty or Know Its Terms

Express warranties are defined by UCC 2-313 as follows:

(1) Express warranties by the seller are created as follows:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

4

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

Pennsylvania's Commercial Code defines "express warranty" in a substantially similar fashion as follows:

(a) General rule.--Express warranties by the seller are created as follows:

(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(b) Formal words or specific intent unnecessary.--It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the opinion of the seller or commendation of the goods does not create a warranty.

13 Pa.C.S.A. § 2313.

Neither the Uniform Commercial Code nor Pennsylvania's Commercial Code, discuss the impact of an express warranty on a third-party beneficiary. The Commentary

to these code sections likewise does not provide a definitive roadmap upon which this Court may base its decision. For this reason, the Court first considers what has been pled, what has been argued, and the impact of Pennsylvania substantive case law on the issues raised by Defendant in his Brief in Support of its Motion to Dismiss.

Plaintiff's Amended Complaint contains factual allegations which state in pertinent part as follows: "[Defendant] . . . sold Trim[B]oard to Plaintiff through Plaintiff's builders . . . and the Trim[B]oard was purchased by Plaintiff's builder, after obtaining authority from Plaintiff to do so based upon representations of the suitability and cost of the product . . . Plaintiff's builder was aware of the [Defendant's] express warranty and terms thereof when he purchased the Trim[B]oard on Plaintiff's behalf . . . ." Doc. no. 25, ¶ 12. "[Defendant] . . . provided an express warranty to Plaintiff . . . and the owners of the structures on which Trim[B]oard was installed and/or applied. Id. ¶ 14.

Plaintiff's Amended Complaint further states, ". . . Trim[B]oard is inherently defective for exterior use and fails to perform as intended because it prematurely deteriorates, rots . . . under normal conditions and natural outdoor exposure; causes consequential water and structural damages; and promotes the growth of mold, mildew, fungi, and insect infestation in structures in which it was installed." Id. ¶ 22. "Plaintiff's defective Trim[B]oard was installed on the outside of his home . . . and began to rot and led to water leakage and damage to the Trim[B]oard and . . . other building components installed after initial construction of Plaintiff's home . . . ." Id. ¶ 23.

Finally, Plaintiff's Amended Complaint alleges, "Plaintiff first discovered damage to his Trim[B]oard in 2010. Plaintiff filed a warranty claim with [Defendant] in 2010.

6

Instead of providing Plaintiff with an offer to replace the defective Trim[B]oard, [Defendant] effectively denied the claim by offering only $2,780.08 as a settlement which did not even begin to address the scope of work required to replace the defective Trim[B]oard." Id., ¶ 25.

The express warranty Defendant allegedly provided to Plaintiff (through his builder), states, "[Defendant] will compensate the owner for the repair and replacement of the affected trim for more than twice the original purchase price of the affected trim if failure occurs within ten years." Doc. no. 1-2 at p. 1.

Defendant's primary argument in its Brief in Support of its Motion to Dismiss is that Plaintiff was unaware of the specific terms of the express warranty Defendant allegedly provided to Plaintiff's builder, and Plaintiff was unaware that ABTco issued the express warranty at the time Plaintiff's builder purchased the TrimBoard for the Plaintiff's house. In support of its contentions in this regard, Defendant relies upon: *Goodman v. PPG Industries*, 849 A.2d 1239 (Pa. Super. 2004); *Pennsylvania Employees Ben. Trust Fund v. Astrazeneca Pharm., LP.*, 2009 WL 2231686 (M.D. Fla. July 20, 2009), an unreported opinion out of the United States District Court for the Middle District of Florida; and *Fairmount Supply Co. v. Cressman Tubular Products, Corp.*, 2011 U.S. Dist. LEXIS 24506 (W.D. Pa. Mar. 10, 2011), an unreported and unpublished Opinion of this Court.

The Court finds that these three cases are not on point with the one presently at issue. First, in *Goodman,* and *Fairmount,* the terms of the express warranties at issue made no provisions for any third parties. This is distinctly different here, where the express warranty explicitly states, "[s]hould the product fail within ten years of the date of installation, ABTco, Inc. after investigation and verification, will replace the defective trim on the following basis:

ABTco will compensate the <u>owner</u> for the repair and replacement . . . ." Doc. no. 1-2, emphasis added.

Because the Plaintiff attached a copy of the express warranty to his Complaint, the terms of that warranty may be considered by this Court for the purposes of deciding the Motion to Dismiss. Because this Court must accept as true all well-pleaded facts, the Court must accept as true that his TrimBoard was installed in July of 2003 (doc. no. 25, ¶ 8), and that he discovered damage to the TrimBoard within the 10-year express warranty period, sometime in 2010. Id., ¶ 25. Accordingly at this juncture, relying solely on the facts as pled by Plaintiff, and accepting them as true solely for the purposes of deciding this motion, the express warranty appears on its face to make to a 10-year guarantee to Plaintiff as the "the owner."

However, Defendant argues that like the *Astrazeneca* case (wherein the District Court in Florida had to apply Pennsylvania law), Plaintiff's Amended Complaint also fails to allege that anyone told him "that [Defendant] was issuing a warranty to him of any kind." Doc. no. 17, p. 6. This Court disagrees. As noted above, Plaintiff's Amended Complaint alleges, "[Defendant] . . . sold Trim[B]oard to Plaintiff through Plaintiff's builders . . . and the Trim[B]oard was purchased by Plaintiff's builder, after obtaining authority from Plaintiff to do so based upon representations of the suitability and cost . . . ." Plaintiff's builder, who acted as Plaintiff's agent "was aware of [Defendant's] express warranty and terms thereof when he purchased Trim[B]oard on Defendant's behalf. . . ." Doc. no. 25, ¶ 12. Although the phrase suggesting that the builder acted as Plaintiff's "agent" could be construed as a legal conclusion, there are ample facts pled by Plaintiff to suggesting that he knew about the "suitability" of the TrimBoard for the project and this could include knowledge of the express warranty.

Defendant further argues that even though the express warranty itself makes reference to the fact that the home owner may enforce the warranty, and even though Defendant acknowledges that Plaintiff possessed a 2003 version of the warranty (see doc. no. 17, p. 7), Defendant contends that Plaintiff's Amended Complaint fails to allege that he was aware of the specific terms of the express warranty at the time the express warranty was issued, and thus, under *Goodman*, his case must be dismissed.

Again, this Court disagrees. As stated by the Pennsylvania Superior Court in the *Goodman* case:

> Thus, in order to preserve the unique character of express warranties, we hold that third parties may enforce express warranties only under circumstances where an objective fact-finder could reasonably conclude that: (1) the party issuing the warranty intends to extend the specific terms of the warranty to the third party (either directly, or through an intermediary); and (2) the third party is aware of the specific terms of the warranty, and the identity of the party issuing the warranty.

849 A.2d at 1246. There is no indication in this portion of the *Goodman* opinion that a third-party beneficiary must possess knowledge of the specific terms of that warranty at the time the warranty is issued. However, even if knowledge of the express warranty's specific terms are required, Plaintiff's Amended Complaint does allege (as this Court has reiterated several times) that (1) Plaintiff's builder was aware of Defendant's express warranty and terms thereof when he purchased TrimBoard on plaintiff's behalf; and (2) the TrimBoard was purchased by Plaintiff's builder, after obtaining authority from Plaintiff to do so based upon representations of the suitability and cost. Thus, there was communication from Defendant-warrantor to builder/agent and builder/agent to Plaintiff. The Court finds that these facts, as pled, while thin, provide the requisite basis under a *Twombly/Iqbal* analysis to survive Defendant's Motion to Dismiss predicated upon *Goodman*.

Furthermore, under *Samuel-Bassett v. Kia Motors America, Inc.*, 34 A.3d 1 (Pa. 2011), the Supreme Court of Pennsylvania held:

> A written express warranty that is part of the sales contract is the seller's promise which relates to goods, and it is part of the basis of the bargain. 13 Pa.C.S. § 2313(a)(1). This statement of law is not qualified by whether the buyer has read the warranty clause and relied on it in seeking its application. See *id*. General contract law supports this interpretation. "Contracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood." *Simeone v. Simeone*, 525 Pa. 392, 581 A.2d 162, 165 (1990); see *Erie Ins. Exchange v. Baker*, 601 Pa. 355, 972 A.2d 507, 511 (2008) (plurality) (plaintiff's failure to read contract not ground to nullify contract terms); *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (1983) (same).

34 A.3d at 25.

The facts of this case (as pled) are not akin to *Goodman*, and the Supreme Court of Pennsylvania in *Samuel-Bassett* appears to have dispelled the notion that a plaintiff – such as Plaintiff in this case – must have known the specific and particular details of the express warranty at the time it was made in order to hold a defendant – such as Defendant in this case – contractually bound to honor those terms.[2] Therefore, based on this reasoning, as well as all of the foregoing legal analysis, this Court declines to grant Defendant's Motion to Dismiss the Plaintiff's Amended Complaint related to the breach of express warranty claim.

### B. Relief Sought Beyond the Specific Terms of the Express Warranty

The following sections of the Uniform Commercial Code establish what a buyer (such as Plaintiff) may recover for breach of warranty:

§ 2-714. Buyer's Damages for Breach in Regard to Accepted Goods.

---

[2] At a minimum, the Court in *Samuel-Bassett* found, given the facts presented in its own case, a third-party beneficiary does not need to have explicit knowledge of the terms in the express warranty. Thus, this means that there is no "blanket rule" that a third-party beneficiary must possess the depth of understanding and knowledge as Defendant posits here. Nor does *Samuel-Bassett* suggest that in all circumstances a third-party beneficiary is automatically entitled to the benefits of an express warranty. Again, here, the Court finds that adequate facts have been pled to allow this case to proceed beyond the "Motion-to-Dismiss stage."

(1) Where the buyer has accepted goods and given notification (subsection (3) of Section 2-607) he may recover as damages for any non-conformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

(3) In a proper case any incidental and consequential damages under the next section may also be recovered.

§ 2-715. Buyer's Incidental and Consequential Damages.

(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

(2) Consequential damages resulting from the seller's breach include

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty.

§ 2-719. Contractual Modification or Limitation of Remedy.

(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and

> (b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.
>
> (2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.
>
> (3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is *prima facie* unconscionable but limitation of damages where the loss is commercial is not.

UCC §§ 2-714, 2-715, and 2-719.[3]

The term "unconscionable contract or clause" is defined in UCC § 2-302 as follows:

> § 2-302. Unconscionable Contract or Clause.
>
> (1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.
>
> (2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

Pennsylvania's Commercial Code nearly mirrors the Uniform Commercial Code's definition of "unconscionable contract or clause" as follows:

> § 2302. Unconscionable contract or clause
>
> (a) Finding and authority of court.--If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made, the court may:
>
> > (1) refuse to enforce the contract;

---

[3] These three sections of the Uniform Commercial Code are nearly identical (in both form and substance) to Pennsylvania's Commercial Code codified at 13 Pa.C.S.A. §§ 2714, 2715, and 2719, respectively.

12

>(2) enforce the remainder of the contract without the unconscionable clause; or
>
>(3) so limit the application of any unconscionable clause as to avoid any unconscionable result.
>
>(b) Evidence by parties.--When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

13 Pa.C.S.A. § 2302.

Defendant argues that Count II of the Amended Complaint must be dismissed because it seeks declaratory relief where class members would be entitled to an award of individualized monetary damages. Doc. no. 17, p. 8. Defendant cites to *Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541 (2011) and *Hohinder v. UPS*, 243 F.R.D. 147, 242 (W.D. Pa. 2007) in support of this position.

Plaintiff counters that *Walmart* and *Hohinder* are Rule 23 class certification decisions wherein the Courts declined to certify a declaratory relief class because the claims primarily involved economic loss. In addition, Plaintiff notes that Defendant failed to cite any cases where a court dismissed declaratory relief at the Motion-to-Dismiss stage, and claims it would be equally inappropriate for this Court to do so. Plaintiff notes that he "has not yet determined whether he will seek Rule 23(b)(3) certification, or whether he will solely pursue Rule 23(b)(2) and/or 23(c) certification" which may, in turn, lead to subclassifications with one or more subclasses seeking economic relief while other subclasse(s) seek declaratory relief. Doc. no. 45, p.12.

Under the Uniform Commercial Code and Pennsylvania's Commercial Code, it is clear that "the measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they

had been as warranted, unless special circumstances show proximate damages of a different amount." UCC § 2-714(2), 13 Pa.C.S.A. § 2714(b).

However, as the Court intimated in "A." above, this case is unique given its set of facts – as pled by Plaintiff. In this case, there is an <u>express</u> warranty which expressly provided "a different amount" of recoverable damages, as alluded to UCC §2-2-714. Plaintiff alleges that he is the third-party beneficiary of this express warranty, and it appears from the face of the warranty attached to the Amended Complaint, that Plaintiff could be a third-party beneficiary. The facts in the Amended Complaint further suggest that Plaintiff wants to avail himself of (at a minimum) the 10-year guarantee (and possibly other promises made in that express warranty) so that he may advance his breach of express warranty claim against Defendant. However, it also appears from the face of the Amended Complaint that Plaintiff wants to disclaim as "unconscionable" only that portion of the warranty which expressly provided "a different amount" of recoverable damages. Plaintiff hopes that if the Court deems the portion of warranty which expressly provided "a different amount" of recoverable damages as "unconscionable," Defendant will have to pay more than what it promised to pay in the express warranty.

Simply put, the warranty expressly states that Defendant will "compensate the owner for the repair and replacement of the affected trim for more than twice the original purchase price of the affected trim[.]" Doc. no. 1-2. Plaintiff wants collect more remuneration from Defendant than that which the warranty expressly provides and attempts to do so by claiming the quoted language is "unconscionable."

Plaintiff's Amended Complaint is rife with factual allegations that Defendant knew that TrimBoard should not be used on exterior surfaces. Doc. no. 25, ¶¶ 29-52. Plaintiff further alleges that Defendant knew the TrimBoard would fail if used as suggested on exterior surfaces,

and thus, Defendant issued an express warranty "which was primarily intended to limit [Defendant's] liability." Stated another way, these facts allege Defendant knew that its express promise to pay "twice the original purchase price of the affected trim" would be less than the damage sustained by Plaintiff and other end users of the TrimBoard product.

Even accepting the factual allegations as true, Defendant's combined knowledge about the product and its limitation of liability language in the express warranty does not render the <u>language</u> of the express warranty "unconscionable." Defendant agreed to pay a set amount in its express warranty, which is permissible under the UCC and Pennsylvania's Commercial Code. The express terms of that warranty are binding on Defendant – and on Plaintiff.

The Court finds that Plaintiff's allegations relating to the knowledge of Defendant, the timing of that knowledge, and the drafts of the express warranty are more properly the subject of a fraud claim, or possibly a product liability claim. Plaintiff's attempt to open to door to additional damages outside those provided for in the express warranty under a breach of express warranty theory must fail.

In Count II of the Amended Complaint, Plaintiff indicates that he "seeks a ruling that . . . b. any limitation of consumer rights in the Defendant's warranty is void as unconscionable; . . .". It is this particular portion of the request for declaratory relief in Count II that the Court finds impossible to reconcile with the breach of express warranty claim. On the one hand, Plaintiff wants to avail himself of the express warranty, but then have this Court declare the relief accorded to him in that same warranty unconscionable so that he may seek unlimited damages. The Court declines to do so.

For this reason, the Court will grant in part Defendant's Motion to Dismiss a portion of Plaintiff's Declaratory Relief claim – specifically, subpart "b." of paragraph 76 of the Amended

15

Complaint. Furthermore, the Court's decision in this regard also impacts subparagraph "c." set forth in the "Prayer for Relief" section of the Amended Complaint. Doc. no. 25, p. 20-21. Accordingly, the Court will order that that subparagraph be stricken as well.

### C. Dismissal of the Class Action Allegations

Defendant's Motion to Dismiss also asks this Court to preclude class certification. The crux of Defendant's first argument is that if Plaintiff's breach of express warranty were to be dismissed, then the request for declaratory relief would necessarily be dismissed, placing Plaintiff out of court. If Plaintiff, as the lead plaintiff, has his own case dismissed entirely, before class certification, then dismissal of the entire class action would be required. *Brown v. Philadelphia Housing Authority*, 350 F.3d 338 (3d Cir. 2003). Because this Court has determined that Plaintiff has pled enough facts to support a plausible breach of express warranty claim against Defendant, this argument advanced by Defendant is moot.

Next, Defendant argues that Plaintiff cannot pursue class treatment "because the facts as pled show that individual issues prevent certification." Doc. no. 42, p. 12. However, as Plaintiff points out, he has not yet moved for certification. Indeed, this Court finds that Defendant's arguments, while on the surface may be well-founded, are premature. The arguments set forth in the final six pages of Defendant's Brief in Support of its Motion to Dismiss appear to be arguments which are better made in a Brief in Opposition to Plaintiff's Motion for Class Certification – should such a Motion be filed. The Court does not believe that this one of the "rare cases" where dismissal of a class action is appropriate where "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met."

For this reason, the Court will deny Defendant's Motion to Dismiss Plaintiff's Class Action Allegations, without prejudice to re-raise these arguments at a more appropriate juncture in this litigation.

**IV. Conclusion**

The Court will grant in part and deny in part Defendant's Motion to Dismiss Plaintiff's Complaint. The Court will grant the Motion to Dismiss insofar as it agrees to strike subparagraph "b." of paragraph 76, and subparagraph "c." of the Prayer for Relief. Other than striking these two subparagraphs, Defendant's Motion to Dismiss shall be denied in all other respects. An appropriate Order shall follow.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All ECF Counsel of Record